# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEQIN GUO,

        Plaintiff,

v.                                   Case No. 08-11027

RELIANCE STANDARD LIFE INSURANCE
COMPANY,

        Defendant.

_____/

## OPINION ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT

Plaintiff Keqin Guo filed this action on March 10, 2008 under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks to recover benefits under 29 U.S.C. § 1132(a)(1)(B). Currently pending before the court are cross-motions for judgment. The court has reviewed the motions and determined that a hearing on the matter is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). The court issues the following findings of fact and conclusions of law, and for the reasons stated below, the court will grant Defendant's motion and deny Plaintiff's motion.

## I. STANDARD OF REVIEW

Denial of benefits under an ERISA plan by the plan administrator is reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber, Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan provides the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court reviews that administrator's determination for arbitrariness or caprice.

*Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002); *Miller v. Metro Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).  Both sides have agreed that the arbitrary and capricious standard of review applies in this case.

Under the arbitrary and capricious standard of review, the court must determine whether the decision to deny Plaintiff benefits was rational and consistent with the terms of the plan.  *Miller*, 925 F.2d at 984; *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

*Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted).  In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious."  *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

The district court reviews the administrator's decision "based solely upon the administrative record," and will only consider evidence outside the administrative record "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 619.

## II.  FINDINGS OF FACT

1.      This action involves a claim under ERISA, 29 U.S.C. §§ 1001-1461, for review of

        a denial of long-term disability insurance benefits.[1]  (Compl. at ¶ 4.)

2.      Formerly employed by CIT Systems Leasing, a subsidiary of CIT Group Inc.,

        Plaintiff was employed as a portfolio accountant. (AR at 500.)

3.       Plaintiff participated in the company's long-term disability insurance plan

        ("Plan").  (*Id.* at ¶¶ 3-4; AR 24-51.)

4.      Defendant provides the Plan through Plaintiff's employer.  (*Id.* ¶ 3.)

5.      The Plan specifically grants Defendant with discretionary authority to interpret the

        terms of the Plan and make eligibility determinations.  (AR at 36.)

6.      The Plan provides for long-term disability benefits, but it also states the limitation:

        "Monthly Benefits for Total Disability caused by or contributed to by mental or

        nervous disorders will not be payable beyond an aggregate lifetime maximum

        duration of twenty-four (24) months unless the Insured is in a Hospital or

        Institution at the end of the twenty-four (24) month period."  (AR at 44.)

7.      The Plan defines "Mental or Nervous Disorders" as "disorders which are

        diagnosed to include a condition such as: (1) bipolar disorder (manic depressive

        syndrome); (2) schizophrenia; (3) delusional (paranoid) disorders; (4) psychotic

        disorders; (5) depressive disorders; (6) anxiety disorders; (7) somatoform

---

        [1] In her complaint, Plaintiff avers in passing that her suit is brought both for a
denial of benefits claim and for a breach of fiduciary duty claim.  However, Plaintiff has
not briefed the claim for breach of fiduciary duty, nor offered any support for it, and the
court deems any such claim waived.

disorders (psychosomatic illness); (8) eating disorders; or (9) mental illness."
(AR at 44.)

8.    CIT's Summary Plan Description ("SPD"), required under 29 U.S.C. § 1022(b),
      received by Plaintiff, stated that "Monthly benefits for total disability due to a
      mental or nervous disorder or substance abuse will not be payable beyond an
      aggregate lifetime maximum of 24 months unless you are confined in a hospital
      or institution."  (Pl.'s Mot. Ex. 1 at 13.)

9.    In November 2002, Plaintiff's personal physician, internist Dr. Kun Zhong,
      diagnosed Plaintiff with vertigo following a trip she made by airplane.  (AR at 298,
      660.)

10.   Dr. Zhong continued to evaluate Plaintiff on a weekly basis for the next month.
      During that time Plaintiff's condition showed some improvement but worsened
      after she attempted to return to work.  (AR at 298-301.)

11.   In December 2002, Dr. Zhong recommended that Plaintiff not return to work and
      referred her to otolaryngologist, or ENT specialist, Dr. Howard Yerman.  (AR at
      297-301, 303-317 345.)

12.   Dr. Yerman stated that his "impression" of Plaintiff's condition was one of
      "imbalance, most likely secondary to benign paroxysmal positional vertigo."  (AR
      303.)

13.   Dr. Zhong then referred Plaintiff to ENT specialist Dr. C. Bart Dickson in
      December 2002, and Dr. Dickson found that Plaintiff "is getting better
      spontaneously," and recommended testing if she was not further improved over
      the next three weeks.  (AR at 144.)

14.   On January 3, 2002, Plaintiff's condition worsened, and she was treated at a

hospital emergency room, where attending physician Dr. Marvin Wells found

possible acute vestibulitis, probable ocular migraine, carotid bruits, and history of

supraventricular tachycardia following examination.  (AR 85-86.)

15.   Dr. Wells conducted a consultation with ENT specialist Dr. Donald Kitain who

found "probably right acute and chronic benign paroxysmal positional vertigo."

(AR 87-88.)

16.   Plaintiff also saw ENT specialist Dr. Elias Michaelides from January through May

2003.  (AR at 616.)

17.   Dr. Michaelides treatment records of Plaintiff note that Plaintiff regularly reported

dizziness, she did not exhibit nystagmus, an expected symptom of vertigo, and

that while she experienced "non-specific dizziness," she also "may have a

significant component of anxiety related dizziness."  (AR at 645-46.)

18.   In a March 2005 summary of his evaluation of Plaintiff, Dr. Michaelides stated:

I believe Keqin [Guo] may have had an initial vestibular insult which
causes dizziness, however, the majority of her symptoms subsequent to
this were secondary to anxiety that may have resulted from her dizzy
feelings.  Upon a review of the clinical findings I do believe significant
components of Ms. Guo's symptoms were not related to vestibular
disease.  With this type of problem I believe that she should have good
ability to function and her prognosis is very good.  It is fair to say at least a
component of her dizziness was related to psychiatric factors.

(AR at 616.)

19.   In March 2003, Dr. Zhong informed Matrix Absence Management, Inc.

("Administrator"), the third-party administrator for the short-term disability

program for Plaintiff's employer, that Plaintiff could not return to work at that time.

(AR at 339.)

20.    Throughout Dr. Zhong's treatment of Plaintiff, he noted that Plaintiff was "anxious" and prescribed her Xanax or other prescription drugs for "anxiety."  (AR at 155, 674.)

21.    Plaintiff had initially received short-term disability benefits; however, they were discontinued in February 2003 when the Administrator found that physician reports did not indicate that Plaintiff could not perform her sedentary employment as a portfolio accountant.  (AR at 138-39.)

22.    On July 31, 2003, the Administrator upheld a denial of Plaintiff's short-term disability benefits because she had not provided "objective medical information to support [her] inability to do [her] occupation."  (AR at 139.)

23.    Plaintiff subsequently filed a federal lawsuit in order to receive short-term disability benefits which were eventually provided to her.  (Pl.'s Mot. at 6.)

24.    In the fall of 2004, Plaintiff requested long-term disability benefits from Defendant, and Defendant referred the matter to the Administrator for review.

25.    As part of Plaintiff's application, Dr. Zhong filled out a form and indicated that Plaintiff's ability to perform simple and repetitive tasks and complex and varies tasks was "extremely limited" and that the limitations were "mental/nervous in nature."  (AR at 949.)

26.    On November 24, 2004, the Social Security Administration determined Plaintiff was disabled and eligible for benefits as of November 18, 2002, subject to review every three years.  (AR at 130-33.)

27.    In November and December of 2004, ENT specialist Dr. Alan Miller provided a review of Plaintiff's medical records.  (AR at 727-31.)

6

28.     In his review of November 29, 2004, Dr. Miller concluded "Normally patients who
        have benign paroxysmal positional vertigo have a resolution of their symptoms
        with a good prognosis.  At this point the prognosis remains indefinite."  (AR at
        731.)

29.     On May 27, 2005, following a review of Plaintiff's medical records, including
        those of Drs. Zhong, Yerman, Dickson, and Michaelides, the Administrator found
        that Plaintiff's symptoms did not warrant total disability, and even if they did, were
        circumscribed to twenty-four months by the mental or nervous disorder limitation
        under the policy.  (AR at 604.)

30.     In particular, the Administrator found that "Dr. Michaelides' review demonstrates
        that . . . you had a psychiatric component that contributes to your disability. . . .
        Throughout Dr. Zhong's records you have been prescribed Xanax, which is an
        anti-anxiety medication. . . . At this time you are not taking any medications used
        to treat dizziness or vertigo, nor are you treating with a specialist."  (AR at 604.)

31.     Following the Administrator's review of Plaintiff's claim, Defendant retroactively
        paid Plaintiff twenty-four months in long-term disability benefits.  (AR at 600-05.)

32.     Plaintiff requested an administrative review of the Administrator's decision on
        November 22, 2005.  (AR at 587-90.)

33.     On January 12, 2006, Defendant acknowledged Plaintiff's request for review and
        stated that it would take the full ninety days permitted for review of claims.  (AR
        at 574.)

34.     Defendant had Plaintiff's file reviewed by ENT specialist Dr. Frederick Ezon.  (AR
        at 550-55.)

35.    In his report of March 15, 2006,[2] Dr. Ezon concluded that Plaintiff's "diagnosis is

dizziness of undetermined etiology.  Her prognosis is not good considering it has

been persistent for over three years. . . . If there is a question of a psychiatric

component to this problem I suggest the patient undergo a psychiatric or

psychological evaluation to determine the extent this contributes to her

dizziness."  (AR at 554-55.)

36.    On April 17, 2006, Defendant informed Plaintiff that it would require time

additional to that provided by ERISA in review of its denial in order to conduct an

independent medical examination by psychiatrist Dr. Kenneth Kron.  (AR at 548.)

37.    On May 24, 2006, Dr. Kron provided a report in which he stated that:

[t]he most likely explanation [for Plaintiff's condition] that is consistent with
her presentation and history is the diagnosis of psychological factors
affecting a general medical condition.  This is a condition in which a
general medical condition is influenced by the presence of the
psychological factors.  Typically, these factors will interfere with treatment
of the general medical condition and precipitate or exacerbate symptoms
of the underlying general medical condition.

(AR at 507, 519.)

38.    In response to a question regarding whether Plaintiff's impairment is caused by

or contributed to by a psychiatric condition, Dr. Kron answered that he did not

"feel that this impairment is solely due to the psychiatric disturbance but is likely a

combination of the underlying medical illness as well as the psychiatric

condition."  (AR at 521.)

---

[2] The report itself states that it was made on March 15, 2005; however, both
parties agree that the date was actually March 15, 2006.

8

39.     On June 29, 2006, Defendant denied Plaintiff's internal appeal for long-term

        disability benefits on that basis that her disability was caused by or contributed to

        by a mental or nervous disorder such that disability benefits were limited to

        twenty-four months.  (AR at 499-504.)

40.     In a letter stating the reasons for Defendant's decision, Defendant informed

        Plaintiff that:

        [w]hile Dr. Kron acknowledges that [Plaintiff's] impairment is due, at least
        in part, to her physical illness, he also affirms that psychiatric illness is a
        contributing factor.  Given this determination, [Plaintiff] would not be
        entitled to any additional LTD benefits because she has already been paid
        the maximum amount under the mental/nervous limit.

        (AR at 503.)

41.     Plaintiff subsequently filed this lawsuit pursuant to ERISA.

### III.  CONCLUSIONS OF LAW AND APPLICATION OF FACTS TO THE LAW

        The issue before the court is whether Defendant's plan administrator's decision

to terminate Plaintiff's long-term disability benefits was arbitrary and capricious.  Plaintiff

asserts that the decision to terminate her benefits was arbitrary and capricious for a

number of reasons, which the court will address below.

### A.  Summary Plan Description

        First, Plaintiff argues that the CIT Summary Plan Description ("SPD") is a plan

document such that the court must resolve any ambiguities between the SPD and the

Plan in favor of Plaintiff.  (Pl.'s Mot. at 12.)  The SPD applies the mental or nervous

disorder limitation only to disabilities "due to" a mental or nervous disorder, whereas the

Plan applies the limitation to disabilities "caused or contributed to" by a mental or

nervous disorder.  Thus, Plaintiff further argues that her disability is not "due to" a

9

mental or nervous disorder because any such disorder arose merely as a result of her

vertigo.  (*Id.*)  In response, Defendant argues that the court must adjudicate Plaintiff's

claim based on the language of the Plan, rather than the SPD.  (Def.'s Mot. at 2.)

Defendant additionally contends that the court may not consider the SPD because it is

not part of the administrative record and was never raised during the administrative

review.  (*Id.*)

Defendant is correct that the SPD is not part of the administrative record before

the court.[3]  However, the Sixth Circuit has held that "the rule preventing a reviewing

court from considering evidence outside the administrative record does not preclude

consideration of the plan documents," including the SPD.  *Brooking v. Hartford Life and

Acc. Ins. Co.*, 167 F. App'x 544, 547 n.4 (6th Cir. 2006) (citing *Bass v. TRW Employee

Welfare Benefits Trust*, 86 F. App'x 848, 851 (6th Cir. 2004)).

Pursuant to ERISA, 29 U.S.C. § 1022, a written summary plan description must

be provided to plan participants "sufficiently accurate and comprehensive to reasonably

apprise . . . participants and beneficiaries of their right and obligations under the plan."

29 U.S.C. § 1022(a).  Statements made in the SPD are binding on the parties and will

govern in the event that the SPD conflicts with the terms of the Plan.  *Edwards v. State

Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988).  "However, *Edwards*

requires more than an inconsistency of terms.  The SPD and the plan must directly

conflict."  *Valeck v. Watson Wyatt and Co.*, 92 F. App'x 270, 272 (6th Cir. 2004) (citing

---

[3] The language Plaintiff identifies as relevant from the SPD states: "Limitations.
Monthly benefits for total disability due to a mental or nervous disorder or substance
abuse will not be payable beyond an aggregate lifetime maximum of 24 months unless
you are confined in a hospital or institution."  (Pl.'s Mot. Ex. 1 at 13.)

*Edwards*, 851 F.2d at 136).  "[L]anguage in a plan summary that is merely ambiguous should not be permitted to trump unambiguous language in the plan itself, particularly where participants receive both the plan and the summary in a single package."  *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 938 (6th Cir. 1996) (citing *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)).  The language of the SPD uses "due to" in place of the Plan's language of "caused by or contributed to by."  Use of the phrase "due to" is ambiguous in this context, capable of meaning both "a significant cause of" and "the sole cause of."  *Adams v. Director, OWCP*, 886 F.2d 818, 821 (6th Cir. 1989) (finding the phrase "due to" ambiguous in the context of determining the contributory cause of a medical condition).  The court cannot permit the ambiguous language of the SPD to "trump the unambiguous language in the [P]lan itself," *Foltice*, 98 F.3d at 938, and therefore the court finds that the relevant language for consideration of Plaintiff's claim is the unambiguous language of the Plan, "caused by or contributed to by."

### B.  Plan Language: "Caused By or Contributed to By"

Plaintiff next argues that her diagnosis is one of vertigo, which constitutes a medical condition.  Plaintiff further argues that any finding that subsequent anxiety "caused or contributed to" her disability is arbitrary and capricious because any anxiety she suffers from arose as a result of her initial disability and inability to work.  (Pl.'s Mot. at 13.)  In response, Defendant contends that the decision that a mental or nervous disorder caused or contributed to Defendant's disability was not arbitrary and capricious because the record substantiates this finding.  (Def.'s Mot. at 7.)

The language of the Plan states that "Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an

11

aggregate lifetime maximum duration of twenty-four (24) months." (AR at 44.) In its final denial of Plaintiff's benefits under this limitation, Defendant informed Plaintiff that psychiatrist "Dr. Kron's diagnosis is 'psychological factors affecting medical condition.' [Dr. Kron] concludes 'I do not feel this impairment is solely due to the psychiatric disturbance but is likely a combination of the underlying medical illness as well as the psychiatric condition.'" (AR at 503.) Defendant terminated Plaintiff's benefits on the basis that a mental or nervous disorder caused or contributed to her disability, that Plaintiff's benefits were thus limited to twenty-four months, and that Plaintiff had already received the maximum amount of benefits. (AR at 503.)

In reaching this decision, Defendant considered the findings of several physicians and peer reviews of Plaintiff's medical file. First, Dr. Miller reviewed Plaintiff's medical file and found that Plaintiff's "condition, although normally self-limiting, appears in this case to be ongoing and to date has no end point. . . . Normally, patients who have benign paroxysmal positional vertigo have a resolution of their symptoms with a good prognosis. At this point the prognosis is indefinite." (AR at 500.) Dr. Michaelides treated Plaintiff as a patient, reporting on March 20, 2003 that she had "[n]on-specific dizziness" and "I also suspect that she may have a significant component of anxiety related dizziness." (AR at 501, 646.) In a summary of his treatment of Plaintiff, Dr. Michaelides noted:

> I believe [Plaintiff] may have had an initial vestibular insult which causes dizziness, however, the majority of her symptoms subsequent to this were secondary to anxiety that may have resulted from her dizzy feelings. Upon review of the clinical findings I do believe significant components of [Plaintiff's] symptoms were not related to vestibular disease. With this type of problem I believe that she should have good ability to function and her prognosis is very good. It is fair to say at least a component of her dizziness was related to psychiatric factors.

12

(AR at 501, 616.)  Next, ENT specialist Dr. Ezon conducted a peer review of Plaintiff's medical file.  Dr. Ezon pointed out that Dr. Michaelides "felt that on multiple examinations there were inconsistencies between [Plaintiff's] symptoms and lack of observed nystagmus.  There were times when [Plaintiff] complained of dizziness and the vestibular testing was normal.  He noted also, that the VNG did not demonstrate any positional vertigo."  (AR at 503, 554.)  Dr. Ezon concluded that Plaintiff suffered from "dizziness of undetermined etiology" and recommended a psychiatric evaluation if there were a question regarding that issue.  (AR 503, 554-55.)  Defendant then had psychiatrist Dr. Kenneth Kron conduct an independent medical examination of Plaintiff. (AR at 507-21.)  Dr. Kron reviewed Plaintiff's medical history, finding that both treating physicians Dr. Zhong and Dr. Michaelides made observations regarding Plaintiff's apparent anxiety.  (AR 503, 513.)  After examining Plaintiff herself, Dr. Kron concluded that Plaintiff's diagnosis is "[p]sychological factors affecting medical condition (anxiety affecting vertigo)."  (AR at 519.)  In answer to a question regarding whether Plaintiff's psychiatric condition contributed to her impairment, Dr. Kron stated that he "did not feel that this impairment is solely due to the psychiatric disturbance but is likely a combination of the underlying medical illness as well as the psychiatric condition."  (AR at 503, 521.)

On this basis of these findings, Defendant found that Plaintiff's disability was "caused by or contributed to by" a mental or nervous disorder.  (AR at 500-05.)  It is specifically supported by the findings of Dr. Michaelides, Dr. Ezon, and Dr. Kron, each of whom found the cause of Plaintiff's dizziness to be undetermined given test results and lack of certain symptoms and additionally noted Plaintiff's exhibited anxiety.

Furthermore, Dr. Kron's diagnosis stipulated that Plaintiff's psychiatric condition, "[p]sychological factors affecting medical condition (anxiety affecting vertigo)," contributed at least in part to Plaintiff's total disability.  (AR at 519, 521.)  Indeed, the "psychological factors affecting medical condition" is a recognized mental condition in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ("DSM IV") and is coded as an Axis I disorder.[4]  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 675-78 (4th ed.) (1994).  The findings of Plaintiff's personal physician Dr. Zhong and Dr. Miller are more equivocal; however, Dr. Zhong also noted Plaintiff's exhibited anxiety, and Dr. Miller expressed that patients with Plaintiff's diagnosed vertigo normally improve and regain ability to function.  Plaintiff did not do so.  For these reasons, Defendant's finding that Plaintiff's psychiatric condition,  "[p]sychological factors affecting medical condition (anxiety affecting vertigo)" (AR at 519), caused or contributed to her disability was not an arbitrary and capricious finding.  *See Miller*, 925 F.2d at 984 ("[A]n ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are rational in light of the plan's provisions." (citation and internal quotation marks omitted)).

Plaintiff's primary argument that her disability was not "caused by or contributed to by" a mental or nervous disorder is that her medical condition, vertigo, antedated any

---

[4] Plaintiff apparently agrees that mental conditions that appear in the DSM IV would constitute "mental illnesses": Plaintiff herself raises the issue of diagnostic codes in her briefing.  (Pl.'s Reply at 5.)  Diagnostic codes are the method of classifying mental disorders in the DSM IV, and the diagnostic code for "psychological factors affecting a general medical condition" is apparently 316.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 675-78 (4th ed.) (1994).

14

mental illness. (Pl.'s Mot. at 13.) However, Plaintiff's argument that the mental disorder must be the initial cause in order to satisfy the requirement of the Plan is not persuasive. The language of the Plan requires that the mental disorder only contribute to the "Total Disability." (AR at 44.) The ordinary meaning of "contributed to by" does not require or even suggest that what contributes to the disability also be the initial cause. Plaintiff's proposed reading of the Plan would render the phrase "or contributed to by" superfluous. In contrast to Plaintiff's interpretation of the Plan, Defendant's is eminently sustainable: Plaintiff's total disability need only result in part from a mental or nervous disorder. (AR at 44.) Even if a medical condition such as vertigo caused Plaintiff's initial disability, the evidence in the administrative record supports the finding that anxiety contributed to the prolonging of Plaintiff's disability and her ultimate prognosis of "Total Disability" such that the Administrator's determination of the same was not an arbitrary and capricious finding. *See Miller*, 925 F.2d at 984.

Second, Plaintiff disputes the policy rationale of the Plan in limiting her claim in this manner, namely that it is unfair that her long-term disability benefits are limited when her medical condition may have induced the resulting mental illness; however, this does not change the plain language of the Plan, and the court cannot ignore the Plan's language. Furthermore, Plaintiff's argument certainly does not render the Administrator's decision arbitrary and capricious, and the court will not find it to be so. *See id.*

Finally, Plaintiff also avers that this definition creates a conflict of interest for Defendant in its interpretation of the Plan. (Pl.'s Mot. at 13.) However, conflict of interest remains only a factor in the court's review of the Administrator's denial of

15

benefits. *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 609 (6th Cir. 2009) ("[C]ourts, in reviewing a benefits decision by an insurer who has discretion over assessing and paying benefits, may consider that conflict as a factor in deciding whether the plan administrator's decision amounts to an abuse of discretion.") (citing *Metro. Life Ins. Co. v. Glenn*, – U.S. – , 128 S. Ct. 2343, 2351 (2008)). Given the plain language of the Plan and the supporting evidence for this issue, the conflict of interest present in this case does not render the Administrator's decision arbitrary and capricious. *See Allen v. UNUM Life Ins. Co. of Am.*, 142 F. App'x 907, 912 (6th Cir. 2005) ("If it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.") (citing *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)). Moreover, because Defendant used the findings of doctors outside its employ in its determination, including considering the opinion of Plaintiff's own treating physician and specialists, conflict of interest considerations are lessened. *See Helfman v. GE Group Life Assurance Co.*, – F.3d –, 2009 WL 2191516, at *7 (6th Cir. Jul. 24, 2009) (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005)). Accordingly, the court finds that the Administrator was not arbitrary and capricious in finding that a mental disorder contributed to Plaintiff's total disability.

### C. Plaintiff's Diagnosis: "Mental or Nervous Disorder"

Plaintiff then argues that no doctor ever diagnosed her with a mental or nervous disorder as defined by the Plan because Dr. Kron only diagnosed Plaintiff with "psychological factors affecting a general medical condition." (Pl.'s Mot. at 13.) In

16

response, Defendant asserts that it based its decision on a review of Plaintiff's medical records and an independent psychiatric evaluation.  (Def.'s Mot. at 11.)

The language of the Plan defines "Mental or Nervous Disorders" as "disorders which are diagnosed to include a condition such as: (1) bipolar disorder (manic depressive syndrome); (2) schizophrenia; (3) delusional (paranoid) disorders; (4) psychotic disorders; (5) depressive disorders; (6) anxiety disorders; (7) somatoform disorders (psychosomatic illness); (8) eating disorders; or (9) mental illness."  (AR at 44.)  Defendant explains that based on psychiatrist Dr. Kron's diagnosis of "psychological factors affecting a general medical condition (vertigo)," it applied the mental or nervous order limitation to Plaintiff because a "mental illness" had contributed to her disability.  (Def.'s Mot. at 12.)  Defendant also points to the diagnosis of Plaintiff's ENT, Dr. Michaelides who stated in a report that the "majority of her symptoms subsequent to this were secondary to anxiety that may have resulted from her dizzy feelings."  (AR at 616.)  In addition to recounting these diagnoses in its final decision to deny Plaintiff long-term disability benefits, Defendant also noted that Plaintiff's internist had observed her anxiousness and had been treating her with "such medications as Valium, Buspar, Paxil and Xanax, all of which are used in the treatment of anxiety."  (AR at 155, 501, 674.)

Most significantly, Dr. Kron also lists on his report under the heading "Clinical Disorders," "psychological factors affecting medical condition (vertigo)."  (AR at 524.) He also stated as a diagnosis: "[p]sychological factors affecting medical condition (anxiety affecting vertigo)."  (AR at 519.)  As recounted above, this diagnosis is an Axis I diagnosis of a clinical disorder, as categorized in the DSM IV.  American Psychiatric

17

Association, *Diagnostic and Statistical Manual of Mental Disorders*, 675-78 (4th ed.) (1994). In his report following evaluation of Plaintiff, Dr. Kron also enumerated several possible diagnoses and determined that this one was most likely. (AR at 519.) In enumerating the possibilities, "psychological factors affecting medical condition," is included in a list with "depression," "anxiety disorder including panic disorder with or without agoraphobia," "somatoform disorder," "psychological symptoms affecting medical condition, and "malingering." (AR at 518.) "Psychological symptoms affecting medical condition" is listed as an Axis I diagnosis in Dr. Kron's report. (AR at 519.)

The plain language of the Plan is not written to be exclusionary, but rather states that "Mental or Nervous Disorders" are "disorders which are diagnosed *to include* a condition such as," listing various mental disorders and concluding the list with "or . . . mental illness." (AR at 44 (emphasis added).) Therefore, a diagnosis of "psychological factors affecting medical condition" could be included in the Plan's limitation governing "mental illness." The Plan further gives the Administrator discretion in interpreting the Plan. (AR at 36.) "[I]f there is a reasonable explanation for the administrator's decision in light of the plan's provisions, then the decision was not arbitrary and capricious." *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 105 (6th Cir. 2004) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). Given the evidence of Dr. Kron's diagnoses, the findings of Plaintiff's other physicians, and the lack of positive testing for vertigo, it was not arbitrary and capricious for Defendant to find that Plaintiff's disability was contributed to by a mental disorder, namely psychological factors affecting general medical condition.

18

**D.  ENT's Review**

Plaintiff also maintains that Defendant omitted November and December 2004 reviews by ENT specialist Dr. Miller ("Miller Review") in Defendant's denials of Plaintiff's long-term disability claim and that Defendant provided the Miller Review to Plaintiff only as part of the administrative record for the instant matter.  (Pl.'s Mot. at 14.)  Defendant argues that it was not required to provide the Miller Review to Plaintiff unless she specifically requested her claim file, and she did not request it.  (Def.'s Mot. at 12.)

First, Plaintiff is incorrect to state that Dr. Miller's report was not considered in the administrator's evaluation of Plaintiff's claim.  In the June 2006 final decision letter, Defendant recounted portions from both Dr. Miller's November 2004 review and his December 2004 addendum.  (AR at 500.)  Dr. Miller conducted a peer review of Plaintiff's medical file and concluded that "she had a waxing and waning of her symptoms throughout her treatment" for "benign paroxysmal positional vertigo," and that while patients with this condition normally recover, Plaintiff's "prognosis remains indefinite."  (AR at 500.)

Second, Defendant was not required to disclose the Miller Review to Plaintiff unless she requested it.   29 C.F.R. § 2560.503-1 ("Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.") Indeed, in its May 27, 2005 denial of her claim, the Administrator informed Plaintiff that it would "upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits."  (AR at 614.) Plaintiff does not allege she ever made such a request.  Nor does Plaintiff provide any

authority for requiring Defendant to discuss each report of the record in its determination regarding Plaintiff's benefits or why failing to do so constitutes arbitrary or capricious review.  Nor would this be a feasible rule.  Moreover, the Sixth Circuit has repeatedly stated that "where there are two reasoned medical opinions on an issue, it is not arbitrary and capricious to select one over the other."  *Moon v. Unum Provident Corp.*, 405 F.3d 373, 380 n.1 (6th Cir. 2005) (citing *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)).  That Defendant found the later-conducted independent medical examination, performed by psychiatrist Dr. Kron, to provide a more thorough, current, and accurate report of Plaintiff's condition is not arbitrary and capricious.  *See id.*

Finally, in the instant case, Plaintiff does not even allege that the Miller Review and subsequent medical diagnoses are inconsistent.  The Miller Review simply does not discuss any psychiatric symptoms or diagnoses of Plaintiff because it was performed before such a diagnosis was suggested or relevant to the enforcement of the Plan.  Defendant was not arbitrary or capricious in not mentioning the Miller Review in its initial denial of long-term benefits, nor was it arbitrary and capricious in not providing Plaintiff a copy when she never requested her file documents from Defendant.

### E.  Psychiatric Review

Plaintiff further argues that Defendant did not obtain a psychiatric review until the after the time for review under the Plan had already elapsed and that such delay "suggests an arbitrary and capricious process."  (Pl.'s Mot. at 14.)  Defendant, however, contends that this delay does not support a finding of arbitrariness or caprice.  (Def.'s Mot. at 13.)

20

First, any elapsed time period in this case that could be characterized as delay does not show arbitrariness or caprice in this case.  As Defendant examined Plaintiff's medical record, it found that the psychiatric review was necessary.  The Sixth Circuit has found that an administrator's decision-making process is not irrational when it is based on a "constantly expanding medical record" and any delay associated with this does not in and of itself render an administrator's decision arbitrary and capricious. *Hurse v. Hartford Life & Accident Ins. Co.*, 77 F. App'x 310, 315 (6th Cir. 2003). Moreover, Dr. Kron conducted a physical examination of Plaintiff, rather than merely reviewing her medical history file, such that any decision by the Administrator is less likely to be arbitrary and capricious.  *Helfman*, 2009 WL 2191516, at *8 ("[W]hile . . . an administrator is not barred from engaging in a file review in lieu of a physical exam, 'the failure to conduct a physical examination-especially where the right to do so is specifically reserved in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'") (quoting *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)).

Additionally, Plaintiff appears to misapprehend the standard the court is required to apply in this case: "arbitrary and capricious" does not mean simply "does not follow the letter of the law"; rather it means a decision was not rational in light of the supporting evidence.  Plaintiff does not provide the court any authority to find that some delay in obtaining a psychiatrist's evaluation of Plaintiff renders the Administrator's decision arbitrary and capricious.

**F.  Administrator's Denial**

Finally, Plaintiff avers that the Administrator's May 2005 decision approved

benefits but made a finding that Plaintiff was not eligible for total disability, even though

the Miller Review found Plaintiff to be totally disabled.  (Pl.'s Mot. at 15.)  Plaintiff

alleges that Defendant tried to find a way to deny Plaintiff's benefits and that this

constitutes arbitrary and capricious review.  (*Id.*)

Plaintiff points to the initial May 2005 decision by the Administrator stated in

support of her contention.  In pertinent part it states:

> Based on the information above, we feel that it is clear that you were
> being treated for a condition, but do not necessarily agree that your
> complaints were severe enough to warrant total disability.  However,
> allowing that your condition is even severe enough to justify Total
> Disability, it would fall under the mental nervous provision since your
> condition is caused and or contributed to by psychiatric factors.  At this
> time, your claim is being paid to May 17, 2005, the mental nervous
> limitation maximum, and your claim will be closed effective May 17, 2005.

(AR at 604.)  Contrary to what Plaintiff alleges, Defendant paid Plaintiff long-term

disability benefits up to the twenty-four months time limit imposed by the Plan's mental

or nervous disorder provision.  (*Id.*)  In addition to her incorrect interpretation of

Defendant's decision, Plaintiff's offers no support, other than bald assertion, for her

contention that Defendant acted arbitrarily or capriciously in its handling of her claim.

What Plaintiff characterizes as "an attitude that denials are the accepted course of

dealing" (*id.*), the court finds to be a statement in the alternative, and used in decision-

making to economize resources by deciding the more easily adjudicated issue first and

dispensing with any reason to decide a second issue.  The court does not find that

Defendant acted arbitrarily or capriciously as suggested by Plaintiff, but rather finds that

Defendant was merely enforcing the terms of its Plan.

22

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion for

Judgment" [Dkt. #14] is GRANTED and Plaintiff's "Motion for Judgment" [Dkt. #11] is

DENIED.


S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 30, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 30, 2009, by electronic and/or ordinary mail.


S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522